**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| KENNETH E. LIPSCOMB, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:16-CV-134-PRC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Kenneth E. Lipscomb on April 21, 2016, and Plaintiff's Brief [DE 18], filed by Plaintiff on October 17, 2016. Plaintiff requests that the January 23, 2015 decision of the Administrative Law Judge denying his claim for disability insurance benefits be reversed and remanded for further proceedings. On December 9, 2016, the Commissioner filed a response. Plaintiff filed a reply brief on January 26, 2017. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

Plaintiff filed an application for disability insurance benefits on November 26, 2012, alleging disability since March 1, 2012. The claim was denied initially and on reconsideration. On April 29, 2013, Plaintiff filed a written request for hearing. On December 1, 2014, Administrative Law Judge Kimberly S. Cromer ("ALJ") held a hearing. In attendance at the hearing were Plaintiff, Plaintiff's attorney, an impartial medical expert, and an impartial vocational expert. On January 23, 2015, the ALJ issued a written decision denying benefits, making the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act
           through March 31, 2016.

2. The claimant has not engaged in substantial gainful activity since March 1, 2012, the alleged onset date.

3. The claimant has the following severe impairments: diabetes mellitus, type II, with macular edema, [tendinitis] of the right shoulder, asthma, borderline intellectual functioning and affective disorder/anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant should never climb ladders, ropes, or scaffolds, and could only occasionally crawl. The claimant should only reach overhead with the right upper dominant extremity occasionally. He could only have concentrated exposure to temperature extremes, humidity, and respiratory irritants and cannot engage in any commercial driving. The claimant should avoid all exposure to dangerous moving machinery and must work on a flat even surface. He is precluded from working with items smaller than the size of a paperclip or work requiring peripheral acuity. The claimant could only occasionally look at a computer screen. In terms of his mental capacity, the claimant is limited to simple, routine work involving only occasional changes to the work setting and no fast-paced, assembly line work but he could do work at a variable rate.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1961] and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2012, through the date of this decision.

(AR at 11-26).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and

the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [the] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite his limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. §

404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

In his appeal, Plaintiff argues that the ALJ failed to consider Impairment Listing 12.05C, improperly addressed conflicting evidence between medical opinions, erred in accounting for Plaintiff's limitations in social interaction in determining Plaintiff's RFC, and failed to meet her burden at step five. The Court considers each argument in turn.

### A. Impairment Listing 12.05C

At step three of the disability evaluation process, the ALJ determines whether a claimant's impairments meet or equal the criteria of a Listing of Impairments, and, if they do, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). In order "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that manifests only some of the criteria will not qualify, no matter its severity. *Id*. A claimant "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (citing *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999)). Nevertheless, "[i]n considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d at 668 (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315

6

F.3d 783, 786 (7th Cir.2002); *Scott v. Barnhart*, 297 F.3d at 595–96; *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

Plaintiff asserts that the ALJ failed to consider whether Plaintiff meets Listing 12.05C. The version of Listing 12.05 in effect on the date of the ALJ's decision provided, in relevant part,

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (effective Jan. 2, 2015–May 17, 2015).[1]

The regulation clarifies that, to meet Listing 12.05, an impairment must satisfy both the diagnostic description in the introductory paragraph and any one of the sets of criteria in A, B, C, and D. *Id.* at § 12.00A. Thus, there are four requirements that must be met before a claimant will be found disabled under Listing 12.05C: "(1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested during the developmental period before age 22; (3) a valid verbal, performance, or full scale IQ of sixty through seventy; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function."

---

[1] Though the Listing has subsequently been amended, the version of the Listing in effect at the time of his hearing is the applicable version for the Court's analysis. *See Rice v. Barnhart*, 385 F.3d 363, 369 n.4 (7th Cir. 2004).

*Adkins v. Astrue*, 226 F. App'x 600, 605 (7th Cir. 2007) (citing *Maggard*, 167 F.3d at 380; 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.05).

In her decision, the ALJ explicitly stated that she considered the following Listings: 1.02b (major dysfunction of a joint), 1.04 (disorders of the spine), 12.02 (organic mental disorders), and 12.06 (anxiety related disorders). The ALJ nowhere mentions Listing 12.05 by name. In her discussion of Plaintiff's RFC, the ALJ notes that "[c]ounsel argues that the claimant is close to having a listing level mental impairment with this IQ [of 67], but also that he has adapted in the workplace." (AR at 24). The ALJ continues,

> As noted by Dr. Bucur, adaptive functioning places the claimant within the borderline intellectual functioning range and I have accommodated these findings by limiting the claimant to simple, routine work involving only occasional changes to the work setting and no fast-paced, assembly line work but he could do work at a variable rate.

*Id.*

The Commissioner argues that the Plaintiff's ability to adapt to the workplace is fatal to his assertion that he meets Listing 12.05C. The ALJ's discussion of Plaintiff's adaptation to the work place takes place in the context of determining Plaintiff's RFC. The requirement for the Listing, however, is not that Plaintiff fail completely in adaptive functioning, but that Plaintiff have deficits in adaptive functioning, which "denotes inability to cope with the challenges of ordinary everyday life." *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007). Though the ALJ considered Plaintiff's adaptive functioning in determining Plaintiff's RFC, the Court cannot with confidence say that the ALJ considered whether the degree of deficit in Plaintiff's adaptive functioning is severe enough to meet Listing 12.05C. Plaintiff presented evidence that he took special education classes after failing the sixth grade, and that he has difficulty comprehending basic information, following

8

directions, and organizing information with mathematical data. Plaintiff and his wife both reported that Plaintiff has difficulty with spoken instructions.

The ALJ did not address Listing 12.05C in her discussion of whether Plaintiff met a Listing. She did not provide any analysis of 12.05C in that section of the decision and only tangentially refers to it elsewhere in the decision. She nowhere mentions the requirements of Listing 12.05C. Remand is required on this basis.

### B. Conflicting Medical Opinions

In determining whether a claimant is disabled, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence . . . received." 20 C.F.R. § 404.1527(b). The ALJ evaluates every medical opinion received, including the opinions of nonexamining sources such as state agency medical and psychological consultants as well as outside medical experts consulted by the ALJ. *Id*. § 405.1527(c), (e)(2). In weighing all opinion evidence, the ALJ considers several factors and "must explain in the decision the weight given" to each opinion. 20 C.F.R. § 404.1527(e)(2)(ii), (iii); *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th 2008).

Factors the ALJ considers in weighing medical opinion evidence include the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention. *Id*. § 405.1527(c)(1)-(6). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel*, 345 F.3d at 470.

9

Plaintiff contends that the ALJ failed to address why she accepted the opinion of a non-examining medical source over the opinion of an examining medical source regarding his ability to reach overhead with his right arm.

In discussing Plaintiff's ability to reach, the ALJ wrote:

> The medical expert notes that there is evidence of [tendinitis], but not a torn tendon. In fact, the most recent x-ray of the claimant's right shoulder, dated July 22, 2014, shows evidence of mild glenohumeral degenerative joint disease. The record reflects that the claimant noted some improvement in shoulder range of motion after physical therapy. Regardless, I acknowledge that the claimant has demonstrated a reduced range of motion of the right shoulder with mild decreased grip strength at 4/5 in all upper major muscle groups during the consultative examination and at some other routine examinations. I have accordingly accounted for these limitations within the residual functional capacity assessment above, including that the claimant should only reach overhead with the right upper dominant extremity occasionally.

(AR at 20 (citations omitted)).

Later in the decision, in discussing non-examining medical expert Dr. Bernard Stevens's opinion, the ALJ does not specifically reference Dr. Stevens's opinion regarding Plaintiff's right arm and shoulder. Similarly, in discussing examining medical expert Dr. J. Smejkal's opinion, the ALJ does not specifically reference Dr. Smejkal's opinion regarding Plaintiff's right arm and shoulder. The ALJ gave "great weight" to Dr. Stevens's opinion and "little weight" to Dr. Smejkal's opinion.

The ALJ explained that she assigned great weight to Dr. Stevens's opinion because he is familiar with the disability program and its rules and had the opportunity to review Plaintiff's record and to listen to Plaintiff's testimony at the hearing. The reasons that the ALJ provided for giving only little weight to Dr. Smejkal's opinion are that they are inconsistent with his own examination findings and the overall evidence of the record. The inconsistencies given by the ALJ relate to Plaintiff's ability to stand and walk during the work day and not to any other restrictions.

The ALJ has provided an insufficient analysis regarding her decision to reject Dr. Smejkal's medical opinion. Dr. Smejkal is a consultative examiner, so, like Dr. Stevens, Dr. Smejkal is familiar with the disability program and its rules. Further, though Dr. Stevens had the opportunity to review Plaintiff's record and listen to Plaintiff's testimony, Dr. Smejkal had the opportunity to examine Plaintiff. Next, none of the inconsistencies cited by the ALJ relate to Plaintiff's right arm and shoulder. Finally, the ALJ's discussion of Plaintiff's ability to reach overhead with his right arm is entirely devoid of any mention of Dr. Smejkal's opinion that Plaintiff could not reach overhead with his right arm. The Court cannot trace the ALJ's reasoning behind her decision to give little weight to Dr. Smejkal's opinion and to restrict Plaintiff to occasional overhead reaching with his right arm instead of no overhead reaching. In fact, the Court cannot determine whether the ALJ considered this opinion of Dr. Smejkal at all. This provides an independent ground for remand.

### C. RFC Determination

Plaintiff argues that his RFC should include a limitation to only superficial social interaction. In support, Plaintiff cites to the opinion of state agency psychologist Dr. Amy Johnson, to which the ALJ assigned great weight. Dr. Johnson opined that Plaintiff "appears to be able to tolerate superficial, casual interactions with others" and "can relate on at least a superficial basis on an ongoing basis with co-workers and supervisors." (AR at 392). The Commissioner contends that Dr. Johnson's opinion does not limit Plaintiff to these levels of interaction and that the opinion merely states that Plaintiff is capable of at least this much.

When read in the context of the full Mental Residual Functional Capacity Assessment, in which Dr. Johnson made the above-quoted statements, it is clear that the Commissioner's interpretation is correct. In part I.C. of the assessment, Dr. Johnson opined that Plaintiff is not

significantly limited in all five abilities listed under the category of social interaction. Further, the narrative portion, from which the above-quoted statements are taken, indicate that Dr. Johnson is explaining where she considers Plaintiff's allegations of difficulty in functioning to be more restrictive than his actual capabilities. Thus, when Dr. Johnson says that Plaintiff is capable of a certain level of functioning, in context, she is saying that, despite his allegations of more severe restrictions, he is capable of at least the level stated by Dr. Johnson and—impliedly—perhaps more. Dr. Johnson did not restrict Plaintiff to only superficial social interaction, so there is no error in the ALJ's lack of inclusion of such a restriction in Plaintiff's RFC.

## D. Step Five

Plaintiff argues that, at step five, the ALJ failed to account for Plaintiff's vision difficulties in determining that jobs existing in significant numbers are available to Plaintiff. The ALJ placed the following conditions in Plaintiff's RFC due to Plaintiff's vision difficulties: no exposure to dangerous moving machinery; work must be on a flat, even surface; no working with objects smaller than a paperclip; no work requiring peripheral acuity; and only occasional looking at a computer screen.

Plaintiff asserts that the ALJ was required to discuss the hypothetical questions asked of the vocational expert regarding Plaintiff's ability to read font of varying sizes.

Plaintiff's argument is based on three non-precedential opinions issued by the Northern District of Illinois: *Bailey v. Barnhart*, 473 F. Supp. 2d 822 (N.D. Ill. 2006); *Sayles v. Barnhart*, No. 00 C 7200, 2001 WL 1568850 (N.D. Ill. Dec. 7, 2001); and *Connor v. Shalala*, 900 F. Supp. 994 (N.D. Ill. 1995). Plaintiff contends that these cases indicate that an ALJ must discuss all hypothetical questions asked of the vocational expert, even questions that pertain to RFCs other than the RFC

ultimately assigned to the social security claimant. The cases cited, however, are distinguishable. These three cases involve situations where the hypothetical questions that were discussed by the ALJs in their opinions and used at step five do not match the restrictions found in determining the plaintiffs' RFCs.

Had the ALJ found that Plaintiff did not have the functional capacity to read 12-point font, then the ALJ would have needed to discuss the vocational expert's response to the hypothetical question containing this restriction. However, the ALJ placed no such restriction on Plaintiff's RFC. Notably, Plaintiff only argues that the ALJ erred in not addressing the hypothetical questions with font restrictions at step five, not in assigning Plaintiff's RFC without font restrictions. At the RFC determination stage, the ALJ considered Plaintiff's testimony that he has intermittent blurred vision but that he is able to read a newspaper if it is really close to his face and to see a paperclip on the ground and pick it up. She also considered Plaintiff's testimony that computer screens are blurry to him and he cannot clearly make out the words on the screen.

In essence, Plaintiff is asserting that the ALJ needed to discuss testimony from the ALJ that would have no bearing on whether a person with Plaintiff's RFC has a significant number of jobs available to him or her. Plaintiff has not presented the Court with case law—precedential or otherwise—or any other authority indicating that the ALJ bore the burden to discuss this immaterial testimony of the vocational expert.

Plaintiff also argues for the first time in his reply brief that 12-point font is smaller than a paperclip. Even if not waived, this argument would not prevail. The RFC precludes Plaintiff from working with *items* smaller than a paperclip. Text may be printed on an item, but is not the item

itself. There is no inconsistency between the RFC and the question asked of the vocational expert. Remand is not required due to the asserted error at step five.

**CONCLUSION**

Based on the foregoing, the Court hereby **GRANTS** the Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 18], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 18th day of August, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT